**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. EDDIE BOLDEN, | ) ) ) | |
| Petitioner, | ) ) | No. 02 C 7493 |
| v. | ) ) ) | Wayne R. Andersen District Judge |
| JONATHAN WALLS, Warden, Menard Correctional Center, | ) ) ) ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the court on the motion of Petitioner Eddie Bolden ("Bolden") for reinstatement of his habeas corpus petition and for excuse of the exhaustion requirement. For the reasons set forth below, the motion [9] is denied.

**BACKGROUND**

In 1996, following a jury trial in the Circuit Court of Cook County, Bolden was convicted of first degree murders of two persons and of the attempted first degree murder and aggravated battery of a third person. *People v. Bolden*, 756 N.E.2d 812, 814 (Ill. 2001). He was sentenced to natural life imprisonment for the two murder convictions, and a consecutive term of 30 years imprisonment for the attempted murder. *Id*. The Appellate Court affirmed these convictions and sentences in an unpublished order. *Id*. On June 21, 2001, the Supreme Court of Illinois affirmed the judgment of the appellate court. *Id*.

On November 1, 1999, Bolden initiated a state post-conviction proceeding in the Circuit Court of Cook County. (Pet'r's Mot. for Reinstatement at 1.) This matter is still pending in the Circuit Court of Cook County.

On October 17, 2002, Bolden filed before this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. #1.) On that same day, Bolden also filed a motion to stay proceedings "until Petitioner is able to exhaust his remaining state remedies." (Dkt. #5 at 1.) On November 19, 2002, this Court dismissed Bolden's case without prejudice, stating that "[t]he petitioner may file a motion for reinstatement . . . within sixty days after the termination of still-pending proceedings in the Illinois state court system relating to the petitioner's conviction." (Dkt. #8 at 2.)

On July 6, 2009, Bolden filed the instant motion, seeking to reinstate his habeas petition and excuse the exhaustion requirement due to inordinate delay. Bolden seeks relief from this Court because the state post-conviction proceeding initiated in 1999 has yet to be resolved. Respondent opposed the motion, arguing that the delay is not attributable to the State.

According to the materials submitted by the parties, the following is a summary of what has occurred in the state post-conviction case. The case was originally assigned to the Illinois Public Defender's Office, and passed between three different assistant public defenders. (Pet'r's Mot. for Reinstatement Ex. B; Resp. at 3.) Bolden retained private counsel, Steven Greenberg ("Greenberg"), in June 2003, and Mr. Greenberg entered his appearance as Bolden's counsel in August 2003. (Pet'r's Mot. for Reinstatement at 2; Resp. at 3.) From January 2000 to August 2003, Bolden's counsel "agreed to continue the case sixteen times, and the case was continued on petitioner's motion once," with these continuances resulting in "approximately forty-one months of delay." (Resp. at 3.)

Greenberg served as counsel for Bolden from August 2003 through December 2007, when Bolden fired Greenberg and hired Bruce Cowan ("Cowan") as his attorney. During the time when Greenberg represented Bolden, Greenberg "agreed to nineteen continuances and moved for two more," resulting in "approximately thirty-four months of additional delay." (*Id*.)

On October 6, 2008, Bolden filed an "Emergency Motion to Provide Counsel Other Than Public Defender or Proceed Pro Se and Provide Stand-By Counsel." (Pet'r's Mot. for Reinstatement Ex. C.) Bolden explained that this was his "effort to dismiss Bruce Cowan as counsel," due to the fact that Cowan was not working on Bolden's behalf. (Pet'r's Mot. for Reinstatement at 2.) As far as this Court is aware, there has been no ruling on this motion, nor any papers filed in response to it. Nothing in the record of the Circuit Court proceedings indicates that Bolden has ever asked that court to rule on any post-conviction petition filed by him. Instead, he has repeatedly switched attorneys.

On February 9, 2009, Bolden filed his own pro se petition. (*Id*.; Resp. at 4.) Bolden asserts that he has not personally appeared in court on this matter since December 10, 2007. (Pet'r's Reply at 6.)

**LEGAL STANDARD**

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997). In order for the federal courts to grant habeas relief, the state court's judgment must be deemed to have "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

3

presented in the State court proceeding." 28 U.S.C. § 2254(d). As such, federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law. *Vecchio v. Ill. Dep't. of Corr.*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc).

Before a federal court may review the merits of a habeas petition, the petitioner must exhaust state court remedies by presenting his claims to the state court. 28 U.S.C. §2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In other words, the petitioner is required to provide state courts with a meaningful opportunity to "pass upon the substance of the claims later presented in federal court." *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). A meaningful opportunity means that a petitioner "must invoke one complete round of the State's established appellate review process" to resolve any constitutional issues. *O'Sullivan*, 526 U.S. at 845. The rule in Illinois is that "one full round" is completed once the petitioner has presented the habeas claims at each stage of the appellate process, up through the Illinois Supreme Court. *See id.* at 847-48; *see also White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999). A petitioner's failure to exhaust this entire process of state remedies constitutes a procedural default. *See Chambers*, 264 F.3d at 737.

However, there are two exceptions to the exhaustion requirement: "(1) if there is no state corrective process available, or (2) if circumstances exist which render such process ineffective to protect the prisoner's rights." *Sceifers v. Trigg*, 46 F.3d 701, 703 (7th Cir. 1995) (citing 28 U.S.C. § 2254(b)). One type of situation in which state remedies should be deemed "exhausted" is when there has been a delay in state proceedings that is both "inordinate" and "unjustifiable" *Lane v. Richards*, 957 F.2d 363, 365 (7th Cir. 1992); *Sceifers*, 46 F.3d at 703.

4

**DISCUSSION**

Bolden asks this Court to excuse the requirement to exhaust state remedies in his case, because he claims there has been inordinate delay. Bolden's state post-conviction case has been pending since November 1, 1999, which is a total of approximately 124 months (10 years, 4 months). We address three separate segments of time: (1) eight years of delays tied to continuances requested by or agreed to by Bolden's lawyers, (2) two years of delays based on other factors, and (3) Bolden's pro se efforts.

**I.     Agreed Continuances (One Hundred Months)**

As mentioned above, Bolden's post-conviction case has been pending for over 10 years. Respondent first addresses one hundred months (over eight years) of that delay, which he claims were "caused by petitioner (due to his frequent changes of attorneys) and his various attorneys (either through agreeing to continuances or directly requesting them)." (Resp. at 5-6.). While there is no hard rule regarding the length of time required for a delay to be "inordinate," a seventeen-month delay has been found to be sufficient. *Dozie v. Cady*, 430 F.2d 637, 638 (7th Cir. 1970). There is no doubt that an eight-year delay qualifies as "inordinate." So, the question becomes whether the delay is justifiable – that is, whether it is attributable to the State. *Lane*, 957 F.2d at 365; *Sceifers*, 46 F.3d at 703.

Bolden argues that only the continuances *requested* by petitioner's counsel are attributable to petitioner, not those to which his counsel merely *agreed*. (Reply at 4.) Bolden claims that, of the sixty-three continuances granted in his case, only six were requested by Bolden's lawyers. (*Id*. at 3.)

Regardless of whether Bolden's representative requested or simply agreed to each of the continuances, "[u]nder the common law, a lawyer speaks for [his] client." *Lane*, 957 F.2d at

365. Each time Bolden's lawyer agreed to a continuance, Bolden effectively agreed to that continuance. Therefore, Bolden cannot now turn around and attack those continuances to which he (or his lawyer) voiced no objection or protest when they were initially given. Bolden criticized his counsel for "allowing the State to delay." (Reply at 3) However, "errors committed by counsel representing a prisoner on collateral attack are not attributable to the state." *Lane*, 957 F.2d at 365 (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)). The approximately eight years of delay associated with continuances either requested by or agreed to by Bolden's lawyers are not attributable to the State, and therefore do not qualify as unjustifiable.

II.     **Other Delays (Approximately Two Years)**

We next address the remaining time (nearly two years) that is not attributable to continuances either requested by or agreed to by Bolden. Respondent argues that this period of time should not qualify as inordinate, because it "was not one continuous period, which could indicate that the state court had 'forgotten' about the petition." (Resp. at 6.) "Rather, this delay is comprised of months that occurred sporadically over the ten-year period, and arguably may have resulted, in part, from petitioner's serial representation from five separate attorneys." (*Id*.) We agree with Respondent on this point. Therefore, we need not address whether they are attributable to Bolden or the State.

III.    **Bolden's Pro Se Efforts (Nineteen Months)**

We now turn to Bolden's efforts to proceed pro se. As Respondent recognized, if a petitioner is dissatisfied with the inaction of his counsel, all he needs to do is fire his counsel and proceed pro se. (Resp. at 5 (citing *Lane*, 957 F.2d at 365).) Respondent claims that Bolden did this when he filed his pro set petition in February 2009, and since that petition has been pending

6

for approximately one year, any delay associated with that petition could not yet rise to the level of "inordinate." (Resp. at 5-6.) We agree that a one-year delay probably would not qualify as inordinate, but we disagree regarding the start date for measuring this period.

As discussed earlier, on October 6, 2008, Bolden filed a motion asking to dismiss his attorney and proceed pro se. (Pet'r's Mot. for Reinstatement Ex. C.) We previously explained that when Bolden's lawyers spoke to the court and agreed to various continuances, they spoke for Bolden, but as of October 6, 2008, Bolden affirmatively asked the Court to *stop* listening to Cowan, and allow Bolden to speak for *himself*. Therefore, continuances that Cowan may have requested or agreed to after that date should not be attributed to Bolden. Nor can the State argue that Bolden personally requested or agreed to any continuances since the filing of his October 6, 2008 motion, as Bolden insists that he has not been present in court since December 10, 2007. (Reply at 6.)

Bolden's efforts to proceed pro se have been pending since October 6, 2008 (not February 9, 2009), for a total of approximately nineteen months. Bolden provides us with no evidence that he has ever asked the state court to rule on his post-conviction petition. He should do that promptly. If his petition is denied, he can then seek relief from this court.

## CONCLUSION

We conclude that the majority of the delay in Bolden's state post-conviction case is attributable to Bolden, and is therefore "justifiable." We further conclude that the portion of the delay attributable to the State is not "inordinate." As such, Petitioner's Motion for Reinstatement and Excuse Exhaustion Due to Inordinate Delay [9] is denied.

This Court's order of November 19, 2002 remains in effect, and is reiterated here: The case was dismissed without prejudice as of November 19, 2002. Petitioner may file a motion for

7

reinstatement, along with an amended petition, within sixty days after the termination of still-pending proceedings in the Illinois state court system relating to the petitioner's conviction. If no such timely motion for reinstatement is filed by the end of that period, the dismissal order entered November 19, 2002 will become final the next court day.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: April 30, 2010